**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

**AUTO-OWNERS INSURANCE
COMPANY,**

      Plaintiff,

v.

**COOK COUNTY LAND VENTURES,
LLC, BUSH FAMILY PROPERTIES,
LLC, WILLIAM H. BUSH, and ELDEN
HOLMES,**

      Defendants.

Civil Action No. 7:19-CV-87 (HL)

## ORDER

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") seeks a declaratory judgment that it has no legal duty to defend or indemnify its insured, Defendant Cook County Land Ventures, LLC ("CCLV"). Auto-Owners argues that it is not obligated to provide coverage under the commercial general liability policy issued to CCLV because CCLV failed to timely notify Auto-Owners of an occurrence that is the subject of an underlying civil action. CCLV contends whether CCLV provided proper notification of the occurrence is a question of fact that must be resolved by a jury. And, even if CCLV did not give Auto-Owners adequate notice, CCLV argues that Auto-Owners is estopped from denying coverage under the policy because Auto-Owners undertook a defense of the underlying litigation prior to issuing a reservation of rights.

Before the Court are the parties' cross-motions for summary judgment. (Docs. 31, 32). After carefully reviewing the pleadings, briefs, and other evidentiary materials presented, the Court finds no genuine issues of material fact exist as to any claim and **GRANTS** Auto-Owners' Motion for Summary Judgment (Doc. 31). The Court **GRANTS IN PART AND DENIES IN PART** CCLV's Motion for Summary Judgment (Doc. 32).

I.    **BACKGROUND**

On May 24, 2017, Elden Holmes was injured when a pecan tree limb fell and struck him at 204 West 7th Street in Adel, Georgia. (PSOMF ¶ 4).[1] Holmes rented the mobile home situated at that address. (PSOMF ¶ 3; DSOMF ¶ 2).[2] At the time of the accident, William H. Bush and his wife Patricia Bush owned the property located at 204 West 7th Street. (PSOMF ¶ 1; DSOMF ¶ 5).[3] CCLV owned the mobile home. (PSOMF ¶ 2; DSOMF ¶ 3). Bush and CCLV learned of Holmes' injuries and hospitalization the day incident occurred. (PSOMF ¶ 6).

CCLV insured the mobile home at 204 West 7th Street under a commercial general liability policy issued by Auto-Owners, with an effective policy period of

---

[1] "PSOMF" refers to Plaintiff's Statement of Undisputed Material Facts (Doc. 31-2). The paragraphs cited are those admitted by Defendants.

[2] "DSOMF" refers to Defendant CCLV's Statement of Undisputed Material Facts (Doc. 32-2). The paragraphs cited are those admitted by Plaintiff.

[3] Bush testified that he believes at some point he transferred ownership of the property to Bush Family Properties, LLC ("BFP"). (Bush Dep., p. 22, 28).

January 20, 2017 through January 20, 2018. (PSOMF ¶ 8).[4] The policy contains a Commercial General Liability Coverage Form, which provides that the insurance company "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'" (Doc. 1-2, p. 20). Coverage for any occurrence is predicated on the insured's duty to inform the insurer:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.      Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)      How, when and where the "occurrence" or offense took place;

(2)      The names and addresses of any injured persons and witnesses; and

(3)      The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.      If any claim is made or "suit" is brought against any insured, you must:

---

[4] There is evidence in the record that 204 West 7th Street was not added to CCLV's Auto-Owners policy until July 18, 2017, several months after the underlying incident. (Hancock Dep., p. 21-22, 41). Auto-Owners does not seek a declaratory judgment that it has no duty to indemnify or defend CCLV in the underlying litigation on this basis.

(1)     Immediately record the specifics of any claim or
        "suit" and the date received; and

(2)     Notify us as soon as practicable.

(Id. at p. 31).

The insurance policy explains that no legal action may lie against the insurer absent full compliance with the terms of the policy:

### 3.     Legal Action Against Us

No person or organization has a right under this Coverage Part:

a.      To join us as a party or otherwise bring us into a
        "suit" asking for damages from an insured; or

b.      To sue us on this Coverage Part unless all of its
        terms have been fully complied with.

(Id.).

Under the terms of the policy, the words "you" and "your" refer to the named insured, or CCLV. (Id. at p. 20). The terms "we", "us", and "our" refer to the company providing the insurance, or Auto-Owners. (Id.).

William Bush testified that within a week of the incident, he visited the office of Greg Folsom, an agent of Georgia Farm Bureau in Adel, Georgia. (Bush Dep., p. 38). Georgia Farm Bureau insures BFP. (DSOMF ¶ 6). Bush also went to the office of Hayden Hancock in Nashville, Georgia. (Bush Dep., p. 37). Hancock is an independent insurance agent with Heritage Benefits Group, d/b/a Atwater & Houston Insurance Agency. (PSOMF ¶¶ 12-13; Hancock Dep., p. 7).

4

He sells insurance on behalf of multiple insurance carriers, including Auto-Owners. (PSOMF ¶ 15). He is not an employee of Auto-Owners. (Id. at ¶ 14).

Bush testified that he told Hancock he "didn't know if there was going to be any lawsuit connected with [the incident] or not, but [he] just wanted to pass it on to . . . make a record of it in case it comes up later." (Bush Dep., p. 38). According to Bush, Hancock responded that he would "kick it up to his legal section." (Id.). Hancock indicated that he would "get back in touch" with Bush after consulting with "legal counsel to see if they possibly had liability." (Id. at p. 39). Bush had no further communication with Hancock relating to the incident until he received a reservation of rights letter from Auto-Owners nearly two years later. (Id.).[5]

Hancock has no recollection of this conversation with Bush. (Hancock Dep., p. 16). He also has no record of filing a notice of the occurrence with Auto-Owners regarding the May 2017 incident. (Id.). Typically, when an insured contacts the insurance agency regarding a potential claim, the agent immediately

[5] Bush did have other conversations with Atwater & Houston regarding the property at 204 West 7th Street. Bush contacted the insurance agency on July 18, 2017, to inquire whether the property was included on his Auto-Owners policy. (Hancock Dep., p. 21). Bush requested that the property be added effective that day. (Id. at p. 22). There is no evidence that Bush discussed Holmes' accident during that call. (Id.). Then in September 2017, Bush contacted the agency to request that a letter be sent to Georgia Farm Bureau stating that there was no insurance coverage for 204 West 7th Street on May 24, 2017. (Id. at p. 36). Again, there is no evidence that Bush discussed the underlying incident during that call. (Id.).

documents the information in the company's management system. (Id. at p. 14). The agent then notifies the insurance carrier. (Id.). For Auto-Owners claims, notification is made online. (Id.). The agent receives an automatically generated response from Auto-Owners verifying the submission. (Id. at p. 15). If the agent does not receive a timely response, the agent will follow up with the insurance company. (Id.).

Elden Holmes filed a lawsuit suit against BFP in the State Court of Cook County on October 31, 2017. (Hendricks Dep., Ex. 4). Holmes voluntarily dismissed the lawsuit on May 31, 2018. (DSOMF ¶ 8). On December 27, 2018, Holmes filed suit in the Middle District of Georgia against CCLV, BFP, and William Bush. See Holmes v. Cook Cnty. Land Ventures, LLC, No. 7:18-CV-206 (HL). CCLV received service of the Summons and Complaint in the underlying case on February 4, 2019. (Doc. 40-4).

Auto-Owners first learned of the Holmes incident on January 23, 2019—twenty months after Holmes' accident—when Justin Purvis forwarded a copy of the federal lawsuit to Steven Hendricks, a field claims representative for Auto-Owners, and Mark Smith, the Class 8 manager for Auto-Owners' Albany, Georgia office. (Hendricks Dep., p. 7, 10, 54; Smith Dep., p. 6, 8-9, 24). Purvis is an attorney with Young, Thagard, Hoffman, LLP in Valdosta, Georgia. Auto-Owners contracts with the law firm to provide a legal defense to their insureds.

(Hendricks Dep., p. 33). At that time, Purvis represented CCLV in an unrelated matter. See Walton v. Cook Cnty. Land Ventures, LLC, Superior Court of Cook County, No. 2017CV036. (Doc. 42, p. 3). In his email to Hendricks and Smith, Purvis noted that William Bush received service of the underlying lawsuit on January 22, 2019, and that Bush brought the paperwork to Purvis' office. (Smith Dep., Ex. 12). Purvis asked on Bush's behalf whether Auto-Owners insured CCLV as of May 24, 2017, and whether Auto-Owners would provide CCLV a defense. (Id.). Smith responded that Auto-Owners did insure CCLV but that "there may be a serious late reporting issue here and we may have to file a dec action on coverage." (Id.).

On February 5, 2019, Steven Hendricks received an email from Kristin Bosch, in-house counsel for Auto-Owners. (Hendricks Dep., p. 28-29, Ex. 8. Bosch's email stated: "Get back with me after you speak to the insured. When was he made aware of this incident? If it was back in 2017 we can file a dec action." (Hendricks Dep., Ex. 8). Hendricks attempted to contact Bush on February 4 or 8, 2019. (Hendricks Dep., p. 29, 31). Hendricks left a voicemail for Bush in which he informed Bush that Auto-Owners would be issuing a reservation of rights letter to CCLV. (Id. at p. 31).

Hendricks mailed a reservation of rights letter to CCLV by certified mail on February 11, 2019. (Doc. 1-3). The reservation of rights letter references the May

24, 2017 incident involving Elden Holmes and the ensuing lawsuit. (Id. at p. 2). The letter further informs CCLV that Auto-Owners is undertaking a defense of the underlying litigation under a reservation of rights. (Id.). The letter highlights the policy language requiring prompt reporting of any occurrence or claim and notes that the insurance company is "investigating this claim under a Reservation of Rights due to possible late reporting." (Id. at p. 4-5, 6). Specifically, the letter states that the underlying incident "occurred on May 24, 2017" but Auto-Owners "was not aware of any claim or suit until January 23, 2019." (Id. at p. 2).

An answer to the underlying complaint was filed on behalf of CCLV on February 11, 2019—the same day Auto-Owners mailed the reservation of rights letter. CCLV did not receive the reservation of rights letter until February 13, 2019. (PSOMF ¶ 25). Hendricks finally reached Bush by telephone on February 18, 2019. (Hendricks Dep., p. 29). Bush confirmed that he learned of the Holmes accident in 2017. (Id. at p. 30, 57). Hendricks and Bush also discussed that Auto-Owners' defense of CCLV was under a reservation of rights. (Id. at p. 30-31).

Auto-Owners filed this action for declaratory judgment on June 19, 2019. (Doc. 1). Auto-Owners seeks a judgment from this Court declaring that it is not legally obligated to defend or indemnify CCLV in the underlying litigation. (Id. at p. 15).

## II.   SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In reviewing a motion for summary judgment, the "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000) (citations omitted) "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Id. (internal quotation marks and citation omitted). The party seeking summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.

III.    **ANALYSIS**

A.    **Auto-Owners' Motion for Summary Judgment**

Auto-Owners contends that CCLV breached the terms of the insurance contract by failing to provide timely notice of the Holmes accident, a condition precedent to coverage. Absent some justification for the late notification, Auto-Owners argues that it owes no duty to defend or indemnify CCLV in the underlying litigation.

"An insurance policy is simply a contract, the provisions of which should be construed as any other type of contract." Yeomans & Assoc. Agency, Inc. v.

Bowen Tree Surgeons, Inc., 274 Ga. App. 738, 741 (2005) (citation omitted). Construction of a contract presents a question of law for the court. Deep Six, Inc. v. Abernathy, 246 Ga. App. 71, 73 (2000). Under Georgia law, an insurance company is "free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." Auto-Owners Ins. Co. v. Neisler, 334 Ga. App. 284, 286 (2015) (quotation marks and citation omitted). The unambiguous terms of an insurance contract "require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured." Id. (quotation marks and citation omitted). Accordingly, where, as here, the language of the contract is unambiguous, the Court must simply enforce "the contract according to its clear terms." Id. (quotation marks and citation omitted).

Auto-Owners argues that under the plain and unambiguous terms of its contract with CCLV, the insurance company has no duty to defend or indemnify CCLV because CCLV did not timely notify Auto-Owners of the underlying accident. The contract provides: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Doc. 1-2, p. 31). The contract additionally contains a "no action" clause, which states that "[n]o person or organization has a right . . . (a) [t]o join us [Auto-Owners] as a

11

party or otherwise bring us into a 'suit' asking for damages from an insured; or (b) [t]o sue us . . . unless all of its terms have been fully complied with." (Id.). Auto-Owners states, and CCLV does not contest, that these two provisions read together create a condition precedent to coverage.

"When possible, we construe insurance policies to provide coverage, so as to advance the benefits intended to be accomplished by such policies." Progressive Mountain Ins. Co. v. Bishop, 338 Ga. App. 115, 117 (2016). However, "a forfeiture of insurance coverage may result when an insured fails to satisfy a condition precedent to coverage under the contract." Id. "[T]he general rule is that a notice provision in an insurance policy is only considered a condition precedent to coverage if it expressly states that a failure to provide such notice will result in a forfeiture of the insured's rights or uses language which otherwise clearly expresses the intention that the notice provision be treated as a condition precedent." Plantation Pipe Line Co. v. Stonewell Ins. Co., 335 Ga. App. 335, 312 (2015). A statement that "no action will lie against the insurer unless the insured has fully complied with the terms of the policy will suffice to create a condition precedent." Bishop, 338 Ga. App. at 118 (citing Lankford v. State Farm Mut. Ins. Co., 307 Ga. App. 12, 14 (2010) (finding that policy language stating "[t]here is no right of action against" the insurance company "until all the terms of this policy have been met" created a condition precedent to coverage)).

The insurance policy here plainly states that no legal action may lie against the insurer "unless all of [the contract] terms have been fully complied with." (Doc. 1-2, p. 32). The policy thus predicates coverage on compliance with all the terms of the contract, including the provision requiring notification of an occurrence. See Bishop, 338 Ga. App. at 118. Therefore, to obtain coverage under the policy, CCLV must either demonstrate that it complied with the notice provision or provide a justification for failing to do so. See Federated Mut. Ins. Co. v. Owenby Enters., Inc., 278 Ga. App. 1, 3 (2006) ("Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, . . . then the insurer is not obligated to provide either a defense or coverage.") (quotation marks and citation omitted).

The pertinent notice provision in the insurance policy states, "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Doc. 1-2, p. 31).[6] The policy defines "you" as "the Named Insured shown in the Declarations", or CCLV. (Doc. 1-2, p. 20. The policy defines "we" as "the company providing this insurance", or Auto-Owners. (Id.). The unambiguous language of the contract therefore requires that

---

[6] Throughout the briefing of the motions for summary judgment, CCLV conflates the obligation of the insured to provide prompt notice of an occurrence versus notice of a claim or lawsuit. Auto-Owners does not allege that CCLV failed to provide the insurance company with timely notice of the lawsuit. The only question before the Court is whether the insured provided the insurer with timely notice "of an 'occurrence' . . . which may result in a claim." (Doc. 1-2, p. 31).

13

CCLV provide notice of an occurrence to Auto-Owners. Viewing the evidence in the light most favorable to CCLV, William Bush visited the office of Hayden Hancock to apprise him of the tree limb falling and injuring Elden Holmes shortly after the May 24, 2017 incident. Bush relied on Hancock to provide notice of the accident to Auto-Owners. However, there is no evidence from which a reasonable jury could conclude that Auto-Owners received notice of the incident until the insurer learned of the underlying federal lawsuit on January 24, 2019.

It is undisputed that Hancock is an independent insurance agent and not an exclusive producer for Auto-Owners. (DSOMF ¶¶ 13-15).  Under Georgia law, independent insurance agents generally are considered agents of the insured, not the insurer. See Se. Express Sys., Inc. v. S. Guardian Ins. Co. of Ga., 224 Ga. App. 697, 700 (1997). Nevertheless, "an insurance company could place a purported agent in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice of an occurrence or claim." Kay-Lex Co. v. Essex Ins. Co., 286 Ga. App. 484, 489 (2007). "[W]here the existence of an agency is relied upon, the burden of proof rests with the party asserting the relationship." Carter v. Kim, 157 Ga. App. 418 (1981). The party relying on the agency relationship "must also show justifiable reliance on the representation of agency." Kay-Lex Co., 286 Ga. App. at 490 (citation omitted).

14

CCLV points to no language in the contract that grants actual or apparent agency to Hancock or his insurance agency. The name and address of the insurance agency appear along with CCLV's name and address on the first page of the contract. (Doc. 1-2, p. 2). The cover page also contains the following statement:

> Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs! Feel free to contact your independent Auto-Owners agent with questions you may have.

(Id.). Neither the presence of the insurance agency's contact information nor the statement that the insured could contact its independent agent with questions concerning the policy is sufficient to create an issue of fact as to whether Hancock had apparent authority to receive notice of the accident on behalf of Auto-Owners. Rather, the clear terms of the contract provide that notice of an occurrence must be provided specifically to Auto-Owners. See Kay-Lex Co., 286 Ga. App. at 489 (finding that the appearance of the name of the independent insurance agent on the face of the contract did not grant the agent apparent authority to receive notice required to be given to the insurer); Auto-Owners Ins. Co. v. Xytex Tissue Servs., LLC, 421 F. Supp. 3d 1369, 1378 (S.D. Ga. 2019) ("When compared with the clear terms of the Policy requiring notice to be given only to [the insurer] and no statement on the face of the Policy giving [the independent agent] the apparent authority specifically to receive notice, the terms

15

of the Policy do not raise an issue as to [the agent's] apparent agency."); Auto-Owners Ins. Co. v. DFH Dev., Inc., No. 1:08-CV-1465-JOF, 2009 WL 2515638, at *3 (N.D. Ga. Aug. 12, 2009) (finding no apparent authority where the insurance policy specified that notice could only be given to the insurer). CCLV has presented no evidence or case law to support a contrary conclusion.

CCLV instead relies on the testimony of Steven Hendricks, a field claims representative for Auto-Owners, to establish apparent agency based on the parties' conduct. When asked how Auto-Owners typically receives notice of an occurrence that may result in a claim, Hendricks agreed that it is standard practice for an insured to inform an independent insurance agent, who then files the notice with Auto-Owners on behalf of the insured. (Hendricks Dep., p. 26). CCLV argues on this basis alone that providing notice to Hancock was sufficient to meet the notice requirement of the contract. As Mark Smith, the Class 8 manager for Auto-Owners' Albany claims branch clarified, however, whether an insured relies on an independent agent to submit the notice through Auto-Owner's on-line claims portal does not matter. (Smith Dep., p. 6, 26). Smith emphasized that "[t]he policy says that [the insured] must give us notice, and the policy means – us on the policy means Auto-Owners." (Id. at p. 26). Smith further clarified that an insured has the option to submit the notice. (Id. at p. 27).

The evidence is undisputed that CCLV understood Hancock to be an independent insurance agent and not an employee of Auto-Owners. (DSOMF ¶¶ 13-15). When William Bush visited Hancock's office following the tree limb incident, it was with the understanding that Hancock would serve as CCLV's agent in submitting notice of the accident to Auto-Owners. CCLV has pointed to no other conduct "which could have caused [CCLV] to believe that Auto-Owners consented to [Hancock] receiving notice on its behalf." DFH Dev., Inc., 2009 WL 2515638, at *5. Accordingly, notice to Hancock alone was not sufficient to satisfy the notice requirement of the contract. It was incumbent upon CCLV to verify that Auto-Owners received the notice. But there is no evidence that CCLV had any further communications with Hancock or Auto-Owners about the accident until February 2019, when it received notice of Auto-Owners' reservation of rights. (Bush Dep., p. 38).

Even assuming Bush did inform Hancock of the accident, no evidence suggests that Hancock relayed the information to Auto-Owners. Auto-Owners did not learn of the tree limb incident until January 24, 2019, when Justin Purvis emailed the insurer about the underlying lawsuit. As a matter of law, the twenty-month delay between Holmes' accident and when Auto-Owners learned of the incident through the lawsuit was not "as soon as practicable." See Kay-Lex Co., 286 Ga. App. at 490 ("An unexcused significant delay in notifying an insurer

about an incident or lawsuit, . . . may be unreasonable as a matter of law.")
(quotation marks and citation omitted). Courts applying Georgia law have
precluded recovery following delays anywhere from four months to one year. See
Allstate Ins. Co. v. Walker, 254 Ga. App. 315, 316 (2002) (finding an unexcused
delay of eleven to twelve months unreasonable as a matter of law); Se. Express
Sys., 224 Ga. App. at 701 (failure to give notice for eight months was not "as
soon as practicable"); Bituminous Cas. Corp. v. J.B. Forrest & Sons, Inc., 132
Ga. App. 714, 716-17 (1974) (holding a four-month delay unreasonable).

The sole justification offered by CCLV for the late reporting of the incident
is that Holmes did not originally assert a claim against CCLV. Rather, Holmes
initially filed suit against BFP. CCLV confuses the contractual obligation to
provide notice of a lawsuit with the duty to provide notice of the underlying
accident. Whether Holmes filed a lawsuit against CCLV is irrelevant to the
question of whether CCLV timely notified Auto-Owners of the accident underlying
Holmes' claim. There being no evidence from which a reasonable jury could
conclude that CCLV was justified in not ensuring that Auto-Owners received
notice of the underlying incident "as soon as practicable," the Court finds that
CCLV failed to satisfy the contract's notice requirement. Accordingly, Auto-
Owners owes no duty to defend or indemnify CCLV in the underlying litigation.
The Court therefore **GRANTS** Auto-Owner's motion for summary judgment.

18

**B.     CCLV's Motion for Summary Judgment**

CCLV's motion for summary judgment raises two issues. First, CCLV contends that it is entitled to summary judgment because Auto-Owners produced no evidence to support the insurer's theory of a joint venture between CCLV and any other entity. Next, CCLV argues that even if the Court determines that it did not provide timely notice of the Holmes accident to Auto-Owners, Auto-Owners should be estopped from denying coverage for the occurrence. According to CCLV, Auto-Owners did not timely issue CCLV a notice of reservation of rights. CCLV also contends that the notice issued by Auto-Owners was ambiguous and did not fairly inform CCLV on the insurer's position.

**1.     Joint Venture**

In Count One of Auto-Owners' Complaint for Declaratory Judgment, the insurance company asserts that it has no obligation to provide a defense or indemnity in the underlying litigation because CCLV was engaged in a joint venture that was not included as a named insured on the policy's declarations. (Doc. 1, ¶¶ 30-35). CCLV moves for summary judgment as to this claim. Auto-Owners made no response to CCLV's motion. Accordingly, the Court deems the claim abandoned and **GRANTS** CCLV's motion for summary judgment as to Count One of the Complaint. See Jolley v. Triad Mech. Contractors, No. 5:13-CV-247 (MTT), 2015 WL 1299852, at *8 n.16 (M.D. Ga. Mar. 23, 2015) (quoting

Rossi v. Fulton Cnty., Ga., No. 1:10-CV-4254-RWS-AJB2013 WL 1213243, at

*13 n.8 (N.D. Ga. Feb. 13, 2013) *report and recommendation adopted sub nom.*

Rossi v. Fulton Cnty. Bd. of Assessors/Fulton Cnty. Tax Assessors Office, 2013

WL 121329 (N.D. Ga. Mar. 22, 2013) ("[W]here the non-moving party fails to

address a particular claim asserted in the summary judgment motion but has

responded to other claims made by the movant, the district court may properly

consider the non-movant's default as intentional and therefore consider the claim

abandoned.")).

## 2.   Estoppel

CCLV argues that Auto-Owners is estopped from disclaiming coverage

because the insurer did not notify CCLV of its reservation of rights until after

Auto-Owners filed an answer to the underlying lawsuit. CCLV further contends

that the notice issued by Auto-Owners was ambiguous and did not sufficiently

inform CCLV of the basis for the insurer's reservations about coverage. The

evidence does not support CCLV's position.

Generally, "risks not covered by the terms of an insurance policy, or risks

excluded therefrom, . . . normally [are] not subject to the doctrine waiver and

estoppel." World Harvest Church, Inc. v. GuideOne Mut. Ins. Co., 287 Ga. 149,

151 (2010) (quoting Prescott's Atlanta Datsun v. Monarch Ins. Co. of Ohio, 253

Ga. 317, 318 (1984)). However, "where an insurer assumes and conducts an

20

initial defense without effectively notifying the insured that it is doing so with a reservation of rights, the insurer is deemed estopped from asserting the defense of noncoverage regardless of whether the insured can show prejudice." Id. at 156. "The insurer can avoid estoppel by giving timely notice of its reservation of rights which fairly informs the insured of the insurer's position." Id. at 152 (quotation marks and citation omitted).

An insurer's notice of its reservation of rights must be timely and unambiguous. Id. There is no bright line rule for determining timeliness. Rather, the law requires only that an insurer act reasonably promptly in reserving its rights. See Auto-Owners Ins. Co. v. Cribb, No. 2:17-CV-106-RWS, 2019 WL 451555, at *5 (N.D. Ga. Feb. 5, 2019) (finding the insurer estopped from denying coverage where the insurer defended the insured for three months before issuing a reservation of rights); Builders Ins. v. Tenenbum, 327 Ga. App. 204, 210 (2014) (finding reservation of rights untimely where the insurer became aware of a defense in February 2010 but did not issue a supplemental reservation of rights until September 2012); Moody v. Penn. Millers Mut. Ins. Co., 152 Ga. App 576, 577 (1979) (holding there was no estoppel when the insurer presented the insured with a reservation of rights notice sixteen days after filing an answer); Winters v. Gov't Emp. Ins. Co., 132 Ga. App. 756, 759 (1974) (reviewing cases and concluding "that the filing of an answer and taking charge or a defense for a

period of five months" without notice of a reservation of rights "constitutes an estoppel"); State Farm Mut. Auto. Ins. Co. v. Anderson, 104 Ga. App. 815, 818 (1961) (finding reservation of rights notice issued one day after filing of answer timely where insured did not reject the insurer's defense after receiving the notice). "[D]elay in giving notice will be excused where it is traceable to the insurer's lack of actual or constructive knowledge of the available defense." Anderson, 104 Ga. App. at 818 (citation omitted). Delay may also be excused where the insured's express or implied consent to the nonwaiver may be implied from "the insured's acquiescence in the insurer's unilateral reservation of rights; e.g., where the insured, after receiving such notice, permits the insurer to continue defense of the suit." Id.

Here, it is undisputed that Auto-Owners mailed its reservation of rights notice to CCLV on February 11, 2019, the same date Auto-Owners filed an answer to the underlying lawsuit on behalf of CCLV. (DSOMF ¶ 25). It is further undisputed that CCLV did not receive the reservation of rights letter until February 13, 2019. (Id.). CCLV maintains that Auto-Owners should be estopped from denying coverage based on this two-day delay. CCLV argues that Auto-Owners knew of potential coverage issues as early as January 28, 2019, when the insurer drafted an initial version of the reservation of rights letter; but Auto-Owners waited until February 11, 2019 to mail the final draft of the letter. Under

22

these circumstances, CCLV claims that Auto-Owners did not act with reasonable promptness. The Court disagrees.

The rationale behind the estoppel precedent is to ensure that in the event of noncoverage, the insured does not lose the

> innumerable rights associated with the control of the defense including choice of counsel, the ability to negotiate a settlement, along with determining the timing of such negotiations, and the ability to decide when and if certain defenses or claims will be asserted.

World Harvest Church, Inc., 287 at 149 (citation omitted). There is no evidence in this case that the two-day delay in CCLV receiving Auto-Owners' reservation of rights letter impeded CCLV's ability to control its own defense. Instead, the evidence demonstrates that CCLV was aware that Auto-Owners intended to provide a defense subject to a reservation of rights and that CCLV accepted the representation and defense provided by Auto-Owners in the underlying lawsuit.

The Court further concludes that the language of the reservation of rights letter issued by Auto-Owners was not ambiguous. An insurer's notice of its reservation of rights must "fairly inform[ ] the insured of the insurer's position." Id. at 152. The notice may not be "only a statement of future intent." Id. (quotation marks and citation omitted). "At a minimum, the reservation of rights must fairly inform the insured that, notwithstanding the insurer's defense of the action, it disclaims liability and does not waive the defenses available to it against the

insured." Id. (alterations adopted) (quotation marks and citation omitted). Georgia courts have found that language stating "that [the insurer]'s defense of [the insured] (through the assigned law firm) was under a reservation of right to deny coverage and withdraw the defense," constitutes an effective reservation of rights. N. Am. Specialty Ins. Co. v. Bull River Marina, LLC, 709 F. App'x 623, 628 (11th Cir. 2017) (citation omitted).

CCLV claims that Auto-Owners' statement that the insurance company is "investigating this claim under a Reservation of Rights due to possible late reporting" is ambiguous. (Doc. 1-3, p. 6). According to CCLV, it is unclear what Auto-Owners means by "possible late reporting." While the letter states that Auto-Owners "was not aware of any claim or occurrence until January 23, 2019," it is evident based on a reading of the letter as a whole that Auto-Owners is concerned with the late reporting of the May 24, 2017 accident and not the reporting of any lawsuit. (Id. at p. 2). Furthermore, there is no requirement "that the insurance company list each and every basis for contesting coverage in the reservation-of-rights letter before the company may raise such in [a] declaratory judgment action." Gov't Emp. Ins. Co. v. Progressive Cas. Ins. Co., 275 Ga. App. 872, 876 (2005). The letter need only inform the insured that "notwithstanding the defense of the insured, the insurer does not waive its coverage defenses." Wellons, Inc. v. Lexington Ins. Co., 566 F. App'x 813, 821 ("We thus read World

Harvest, on its face, to *require* the insured to fairly inform the insured that it is defending under a reservation of rights, but to only *recommend* that the insurer provide the specific basis for the reservation.") (emphasis in original). The letter here achieves that end. There being no basis to find that Auto-Owners should be estopped from denying coverage, CCLV's motion for summary judgment accordingly is **DENIED**.

## IV.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS** Plaintiff Auto-Owners Insurance Company's Motion for Summary Judgment (Doc. 31). The Court **GRANTS IN PART AND DENIES IN PART** Defendant Cook County Land Ventures, LLC's Motion for Summary Judgment (Doc. 32).

**SO ORDERED**, this the 25th day of August, 2021.

_s/ Hugh Lawson_____
**HUGH LAWSON, SENIOR JUDGE**

aks

25